**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-03111-REB-KLM

ERZEBETH WOLFE, an individual,

     Plaintiff,

v.

US BANK NATIONAL ASSOCIATION,

     Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

     The matter before me is **Defendant's Motion for Summary Judgment** [#26],[1]

filed September 28, 2012.  I grant the motion.[2]

## I.  JURISDICTION

     I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal

question).

## II.  STANDARD OF REVIEW

     Summary judgment is proper when there is no genuine issue as to any material

fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(c);

***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

---

[1] "[#26]" is an example of the convention I use to refer to the docket number of a motion or order, and will be used throughout this Order.

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. ***Geear v. Boulder Cmty. Hosp.**,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

(1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d

1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome

of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505,

2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of

a genuine fact issue.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d

1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995).  Once the motion has

been properly supported, the burden shifts to the nonmovant to show, by tendering

depositions, affidavits, and other competent evidence, that summary judgment is not

proper.  *Concrete Works*, 36 F.3d at 1518.  All the evidence must be viewed in the light

most favorable to the party opposing the motion.  *Simms v. Oklahoma ex rel.*

*Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326

(10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).  However, conclusory statements and

testimony based merely on conjecture or subjective belief are not competent summary

judgment evidence.  *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert.*

*denied*, 120 S.Ct. 334 (1999).

### III.  ANALYSIS

This lawsuit arises under Title I of the Americans With Disabilities Act, 42 U.S.C.

§§ 12111 - 12117 (the "ADA").  Plaintiff began her employment with defendant in 1982.

After a brief period during which she worked for a client, plaintiff returned to US Bank in

April, 2008.  At that time, plaintiff was assigned to work as a customer service manager at defendant's Denver Main branch under supervisor was Lynette Waneka.  According to Ms. Waneka, plaintiff struggled in this position and had difficulty managing her subordinates.  Consequently, in February 2009, plaintiff was transferred to the position of customer service coordinator, which entailed fewer managerial responsibilities but no reduction in pay or benefits.  Nevertheless, during her tenure as a customer service coordinator, plaintiff received multiple disciplinary write-ups for various infractions of bank policies.[3]

Plaintiff suffers from a degenerative hip condition and side effects from hernia repair surgery that limit her ability to stand, walk, and stoop and restrict her from lifting more than 20 pounds.  In December 2009, plaintiff presented defendant with a doctor's note indicating that she required the use of a chair at work.  Defendant also directed plaintiff not to lift bags of coins by herself, although occasionally she still did so if she could not find another employee to assist her.

On January 31, 2010, Ms. Waneka called plaintiff into her office and asked her "why I didn't think about retiring and wasn't I old enough to and wouldn't I like to so I could travel and, you know, do different things or whatever.  And she said it probably would be better as far as my health and because of my age."  (**Def. Motion App.**, Exh. A at 273.)  Plaintiff claims that after she complained to defendant's human resources department about these comments, "everything just started spiraling."  (*Id.*, Exh. A at

---

[3] Although plaintiff disputes having received notice of some of these infractions, she does not dispute that they marked actual events or offer argument or evidence to suggest they were fabricated. Moreover, although plaintiff claims these actions were retaliatory for her complaints about Ms. Waneka's allegedly ageist remarks, most of the infractions occurred prior to February 2010, when plaintiff first brought her complaints to the bank's human resources department.

276.  In April 2010, plaintiff was informed that her then-current position was being eliminated, and she was transferred to the position of teller coordinator at another branch.  Although plaintiff claims she was forced into this position by Ms. Waneka, it is not clear why she was unhappy with the transfer, and there is no evidence to suggest that she complained to anyone about the reassignment or requested assignment to a different position.

In October 2010, plaintiff took a medical leave of absence to have hip replacement surgery.  Prior to her  return to work, plaintiff spoke to her new manager, Erynn Shryack, about the accommodations she required.  Plaintiff indicated that she needed to sit down during the work day and lift no more than 20 pounds.[4]  Defendant claims the teller coordinator position accommodated these medical restrictions:  The branch had no coin machine, so that the lifting requirements were minimal, and plaintiff was allowed to sit at a desk unless assisting on the drive-up teller line, where she was provided with a stool.  Plaintiff counters that these accommodations were a farce, because she was required to walk and stand continuously in the position, and her desk chair was commandeered by others in any event.  At her deposition, plaintiff testified that there were no accommodations that would have rendered her able to perform the essential functions of the job.  Although plaintiff identified other jobs within the bank that she felt were consistent with her medical restrictions, she acknowledged that there were no vacancies in those positions during her tenure.

---

[4]  Her physician's note indicated "[n]o hip flexion >90˚, no internal/external rotation, no lifting > 20 lbs."  (**Def. Motion App.**, Exh. W.)

On February 18, 2011, plaintiff asked Ms. Shryack to countersign a "bait money"[5]

record verifying that an audit of plaintiff's teller drawer had been completed.  My

Shryack testified that she noticed the record had been back-dated by nearly three

weeks, a violation of bank policy.  Plaintiff claims that she did not falsify the record and

that it was Ms. Shryack who altered the document, not her.  Ms. Shryack corrected the

date[6] and reported the violation of policy to human resources.  District Manager Mike

Shoemaker subsequently decided to terminate plaintiff effective February 24, 2012,

based on the falsification of the bait money record and plaintiff's history of previous

policy violations.

This lawsuit followed.  Plaintiff alleges that defendant discriminated against her in

violation of the ADA by failing to accommodate her disability and retaliated against her

for requesting an accommodation and complaining about disability discrimination.

Defendant seeks summary judgment on both claims.

Under the Americans With Disabilities Act ("ADA"), disability discrimination

includes:

> not making reasonable accommodations to the known
> physical or mental limitations of an otherwise qualified
> individual with a disability who is an applicant or employee,
> unless such covered entity can demonstrate that the
> accommodation would impose an undue hardship on the
> operation of the business of such covered entity.

42 U.S.C. § 12112(b)(5)(A).  ***See also Davidson v. America Online, Inc.***, 337 F.3d

---

[5]  "Bait money" refers to currency that can be tracked by serial number, which currency is kept in a teller's drawer in the event of a robbery.

[6]  As required by the bank's dual control protocol, both Ms. Shryack and plaintiff initialed the change.  (***See* Def. Motion App.**, Exh. G & Exh. Q at 33-36.)

1179, 1188-89 (10th Cir. 2003) (describing three types of discrimination prohibited under the ADA).  In order to prove her claim of disability discrimination based on failure to provide a reasonable accommodation, plaintiff must establish that: (1) she was disabled within the meaning of the ADA; (2) she was qualified, that is, that she was able to perform the essential functions of her job with or without reasonable accommodation; and (3) defendant did not "take reasonable steps to reassign a qualified individual to a vacant position or a position the employer reasonably anticipates will become vacant in the fairly immediate future."  ***Bartee v. Michelin North America, Inc***., 374 F.3d 906, 912 n.4 (10th Cir. 2004) (citation and internal quotation marks omitted).

Assuming *arguendo* that plaintiff was disabled within the meaning of the ADA, the fact remains that she admitted at her deposition that there was no accommodation defendant could have made which would have rendered her able to perform the functions of either the teller coordinator or the customer service coordinator jobs and that there were no vacant positions within the company that she could perform within her medical restrictions, either.  These admissions are fatal to her claim.  ***See White v. York International Corp***., 45 F.3d 357, 362 (10th Cir. 1995) (noting that "the ADA does not require an employer to promote a disabled employee as an accommodation, nor must an employer reassign the employee to an occupied position, nor must the employer create a new position to accommodate the disabled worker").

In response to defendant's motion for summary judgment, plaintiff proffered an affidavit insisting that she could have performed the essential functions of these jobs as they were "described and promised to me," and that her deposition testimony to the

contrary "was a product of confusion regarding the form and nature of the question."

(**Plf. Resp. App.**, Exh. F.)  Although an affidavit that conflicts with the affiant's prior

sworn statements cannot be disregarded summarily, a court may disregard an affidavit

that is nothing more than an attempt to create a sham issue of fact.  *Franks v. Nimmo*,

796 F.2d 1230, 1237 (10th Cir.1986).  The reason for such a rule is clear:   "[T]he utility

of summary judgment . . . would be greatly undermined if a party could create an issue

of fact merely by submitting an affidavit contradicting his own prior testimony."  *Id.*

"Factors relevant to the existence of a sham fact issue include:"

> whether the affiant was cross-examined during [her] earlier
> testimony, whether the affiant had access to the pertinent
> evidence at the time of [her] earlier testimony or whether the
> affidavit was based on newly discovered evidence, and
> whether the earlier testimony reflects confusion which the
> affidavit attempts to explain.

*Id.*  None of these factors pertain here.  Plaintiff was cross-examined by her counsel at

her deposition.  Nothing in the record suggests that she was unaware of the physical

demands of the job or her own medical restrictions, or otherwise that newly discovered

evidence undergirds her change of position.  Finally, although plaintiff professes that

she was confused by the questions at her deposition, she fails to explain how the "form

and nature" of the questions were confusing.  Having reviewed the relevant portions of

the deposition transcript, I do not find defense counsel's questions unclear or confusing

in any particular.[7]  Moreover, plaintiff's attempt to skirt the issue by suggesting that she

---

[7] The pertinent testimony is as follows:

> Q     Okay.  Were you able to perform [the teller coordinator] job?
> A     I would say no.
> Q     Okay.  Was there anything that the bank could have done to make you
>       able to perform that teller coordinator job at the drive-up?

could have performed the jobs "as promised" ignores her own testimony that the demands of the jobs as she actually performed them were beyond her capabilities and that there was nothing defendant could have done to make the jobs compatible with her restrictions.  Accordingly, I find and conclude that plaintiff's affidavit is a sham and does not preclude summary judgment on her failure to accommodate claim.

To prove a prima facie claim of retaliation under the ADA, "plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  ***Argo v. Blue Cross and Blue Shield of Kansas, Inc.***, 452 F.3d 1193, 1202 (10th Cir. 2006) (footnote omitted).  Although plaintiff summarily insists that she can prove a prima facie case, she offers nothing suggesting that there is a causal connection between her termination and her request for accommodation or her complaints to human resources about her former supervisor, Ms. Waneka.

Plaintiff requested accommodations in December 2009 and again following her

---

| | |
|---|---|
| A | No. |
| Q | Okay.  Were you able to perform the CSC job when you were at the branch? |
| A | No. |
| . . . . | |
| Q | Okay.  So – so the job – the job duties and responsibilities that were laid out for you as CSC were things that you physically could not do? |
| A | Yes. |
| . . . . | |
| Q | All right.  And . . . the only thing the bank could have done is transfer you to another department, is that correct? |
| A | Yes. |

(**Def. Motion App.**, Exh. A at 98-100.)

return from hip replacement surgery in October 2010.  She complained about Ms.

Waneka's allegedly ageist comments in February 2010.  The most recent of these acts,

therefore, occurred approximately five months prior to plaintiff's termination; the most

distant, some fourteen months prior.  Although not dispositive, such temporal distance

makes it that much more difficult for plaintiff to establish the requisite causal connection.

*See Clark County School District v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508,

1511, 149 L.Ed.2d 509 (2001) (temporal proximity between opposition and adverse

action must be "very close" to warrant a conclusion of causality); *Richmond v. ONEOK,*

*Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (lapse of three months insufficient by itself to

support inference of retaliatory motive).

Of course, a lack of temporal proximity may not attenuate an inference of

retaliatory motive when a plaintiff can establish a pattern of retaliatory conduct that

began soon after her complaints and only ultimately culminated in an adverse

employment action. *See Meiners v. University of Kansas*, 359 F.3d 1222, 1231-32

(10th Cir. 2004); *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir.), *cert.*

*denied*, 116 S.Ct. 2552 (1996).  Yet plaintiff's long history of policy violations and

disciplinary infractions both pre- and post-date her protected activities, and thus do not

come within this exception. *See Meiners*, 359 F.3d at 1232.

Nor has plaintiff identified any other facts or considerations that might justify an

inference of retaliatory motive. *See Connor v. Schnuck Markets, Inc.*, 121 F.3d 1390,

1395 (10th Cir. 1997); *Hysten v. Burlington Northern Santa Fe Railway Co.*, 372

F.Supp.2d 1246, 1254 (D. Kan. 2005).  The supervisor whom plaintiff alleges wished to

retaliate against her, Ms. Waneka, was not involved in the decision to terminate

plaintiff's employment, and plaintiff proffers neither argument nor evidence to suggest

that Ms. Shryack's decision to report plaintiff's actions in relation to the bait money

record or Mr. Shoemaker's decision to terminate plaintiff were tainted by improper,

retaliatory motives.[8]  *Cf. Hysten*, 372 F.Supp.2d at 1254 (evidence sufficient to create

genuine issue of fact as to causation where investigation that led to plaintiff's

termination instigated immediately after plaintiff reported job-related injury and was

presided over by person to whom plaintiff reported injury).  As there is no other

evidence to support an inference of causation, summary judgment as to this claim is

proper as well.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That  **Defendant's Motion for Summary Judgment** [#26] filed September

28, 2012, is **GRANTED**;

2.  That plaintiff's claims against defendant are **DISMISSED WITH PREJUDICE**;

3.  That the Trial Preparation Conference, currently scheduled for Friday,

January 4, 2013, at 4:00 p.m., as well as the trial, currently scheduled to commence on

Monday, January 7, 2013, are **VACATED**;

4.  That judgment **SHALL ENTER** on behalf of defendant, US Bank National

Association, against plaintiff, Erzebeth Wolfe, as to all claims for relief and causes of

---

[8]  Plaintiff's insistence that Ms. Shryack altered the bait money report is a red herring.  Whether she did so *vel non* is relevant to the question of pretext but not to plaintiff's prima facie burden of proving causation.

action; provided, that the judgment shall be with prejudice; and

     5.  That defendant is **AWARDED** its costs to be taxed by the clerk of the court

pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

     Dated December 5, 2012, at Denver, Colorado.

                          **BY THE COURT:**

                          Robert E. Blackburn
                          United States District Judge